```
       IN THE UNITED STATES DISTRICT COURT
    FOR THE EASTERN DISTRICT OF PENNSYLVANIA


OLEG GENIS, D.M.D.            :    CIVIL ACTION
                              :
          v.                  :
                              :
AVESIS THIRD PARTY            :    NO. 20-2502
ADMINISTRATORS, INC., et al.
```

MEMORANDUM

Bartle, J.                                    October 5, 2020

Plaintiff Oleg Genis, D.M.D. ("plaintiff") has sued defendants Avesis Third Party Administrators, Inc., Avesis Inc., Avesis Insurance Inc., Premier Access Insurance Co., and the Guardian Life Insurance Co. of America ("defendants") in this diversity action for: fraud; negligent misrepresentation; breach of contract; tortious interference with contracts and business relations; declaratory judgment; preliminary injunction; and detrimental reliance.  These counts arise from defendants' termination of plaintiff's insurance coverage as a dental services provider.

Before the court is the motion of defendants to dismiss plaintiff's first amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).  The court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)

(citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

In addition, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). This includes documents the defendant attaches if they are referred to in the complaint and "are central to the claim." Id.

II

For present purposes, the court accepts as true the following allegations set forth in the amended complaint. Plaintiff is a dentist who has owned and operated a dental practice since 1996. His main office is located in Feasterville, Pennsylvania ("Feasterville office"). Defendants provide dental insurance and administer government-sponsored dental insurance plans, including Medicare and Medicaid. From 1996 until 2018, plaintiff was a provider covered under defendants' government-funded dental insurance plans and programs for the Feasterville office.

Plaintiff previously provided freelance dental services at three offices in Philadelphia, also covered by defendants, located on Germantown Avenue, on West Passyunk Avenue, and on Roosevelt Boulevard. However, upon learning of

misconduct at these offices, plaintiff sent a letter to defendants on August 5, 2017 and requested that defendants cease coverage for him at these three locations.  Plaintiff specified that the coverage for his Feasterville office should continue.

In December 2017, plaintiff reached out to defendants regarding the credentialing of two more offices in Philadelphia, one on East Allegheny Avenue and one on North Front Street ("Philadelphia offices").  Plaintiff sought to purchase these offices and had learned that defendants provided coverage for a substantial majority of patients at these practices.  Plaintiff contacted defendants to ensure that there were no issues with the credentialing of these Philadelphia offices.  According to plaintiff, defendants informed him that there were no credentialing or billing problems.  On January 11, 2018, plaintiff purchased the Philadelphia offices from third parties, Diamante Dental Inc. and Paradise Dental Inc.

On December 15, 2017, without plaintiff's knowledge, defendants sent notices to plaintiff's patients to inform them that defendants were terminating plaintiff's provider status as of January 17, 2018.  Plaintiff maintains that he did not receive any written notice of defendants' notices to his patients.

It was not until January 17, 2018 that defendants sent termination letters to both Philadelphia offices and stated that

-4-

defendants had terminated coverage for those locations.  The letter stated that the termination would become effective in ninety days.

Plaintiff contacted defendants about these termination letters since he had just purchased these Philadelphia offices based on defendants' assurances that there were no credentialing problems at these locations.  A representative for defendants informed plaintiff that defendants had terminated the provider status at all of plaintiff's offices including the Feasterville office but did not provide further information.

Another representative of defendants subsequently informed plaintiff that his terminated coverage for the Feasterville office was done in error based on plaintiff's August 5, 2017 letter to defendants requesting that his coverage at certain other offices cease.  However, on February 9, 2018, the relations coordinator for defendants told plaintiff that he had been placed on administrative hold and that his coverage was terminated for all locations.  Plaintiff contacted the credentialing director, Michael Exler, who apprised plaintiff that his termination was due to substantial fraud, waste, and abuse at the Philadelphia offices.  This termination also applied to the Feasterville office despite plaintiff's explanation that he had no connection to the Philadelphia offices prior to purchase and was not involved in the misconduct

-5-

alleged.  Exler referred plaintiff to defendants' compliance officer, but she did not respond to plaintiff's counsel's request for more information.

Plaintiff continued to seek credentialing with defendants and applied for provider coverage on June 3, 2019. On October 30, 2019, defendants sent plaintiff notice that defendants had approved plaintiff's application for coverage. The notice also included a provider agreement, that plaintiff and defendants had signed, with a retroactive effective date of June 3, 2019 ("2019 agreement").  Thereafter, plaintiff resumed seeing patients and submitting claims for payments.

However, on November 21, 2019, defendants denied plaintiff's thousands of dollars in claims without explanation. On December 4, 2019, defendants informed plaintiff via e-mail that plaintiff was not a credentialed provider since he had been terminated by defendants' "FWA department," that is their fraud, waste, and abuse department, and thus would not be "brought on board" as a provider.

The 2019 provider agreement between the parties, signed June 3, 2019, requires all notices, including notices of termination, be in writing and sent to the address listed on the signature page.  Plaintiff did not receive any written notice of this termination at 2338 North Front Street in Philadelphia, as required in the 2019 agreement.

Plaintiff also alleges that counsel for defendants stated on a June 9, 2020 call that defendants have a copy of a letter that defendants sent to plaintiff on August 21, 2017 terminating his status as a covered provider. Plaintiff requested a copy of this letter on the phone call and in an e-mail the following day but still has not received a copy.

After defendants revoked credentialing for the Philadelphia offices, the Allegheny Avenue office was forced to close in July 2018, and the Front Street office suffered significant losses in revenue. Plaintiff claims that he purchased the Philadelphia offices with the expectations that they would continue to generate annual revenue of approximately $1,800,000.

III

Defendants move to dismiss plaintiff's claim for fraud in Count I and claim for negligent misrepresentation in Count II under Pennsylvania's "gist of the action" doctrine as enunciated by the state Supreme Court in Bruno v. Erie Insurance Co. See 106 A.3d 48 (Pa. 2014). There the court explained that when a plaintiff brings tort and contract claims together, a court must look to the nature of the duty allegedly violated to decide if the claim sounds in tort or breach of contract. Id. at 64. It cannot be both. The court explained,

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. . . . If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. (internal citation omitted).

Id. at 68.

In Bruno, the plaintiff had an insurance policy to pay him $5,000 for mold damages in his home, which included the cost to remove the mold if needed and test the air and property. Id. at 51. The policy required payment whether or not the mold was toxic. The insurance adjuster and an engineer engaged by the insurance company went beyond what was required in the policy and advised the insured that the mold was non-toxic. Id. at 71. As a result of these representations that the mold was non-toxic, plaintiff's family suffered severe respiratory ailments and plaintiff's wife developed cancer of the throat and esophagus. Id. at 52. The court found that the allegations in the complaint were not based on any contractual duties on the part of the insurer but rather concerned whether the insurer, by and through its agents, acted negligently while fulfilling its

obligations under the contract by making false assurances upon which the plaintiffs then relied.  Id. at 72.

The gravamen of this amended complaint is that defendants withheld key information when plaintiff inquired about the credentials of the Philadelphia offices, which he planned to purchase, and that defendants withheld information regarding plaintiff's status as a credentialed provider in both 2017 and 2019.  At the motion to dismiss stage, the court must accept these allegations as true and construe them in the light most favorable to plaintiff to determine if they state a claim for relief.

Similar to the plaintiff's claims in Bruno, the fraud and negligent misrepresentation claims in this matter do not arise from defendants' contractual duties to plaintiff.  Rather, these claims concern the alleged false assurances and misrepresentations that defendants made to plaintiff regarding the credentialing status of the Feasterville and prospective Philadelphia offices upon which plaintiff relied when he purchased the Philadelphia offices in 2018 and when he provided dental services as a newly credentialed provider in 2019. Plaintiff does not allege that defendants violated any specific contractual provisions or duties in withholding the credentialing information.  The contract merely provided the basis of the relationship between the parties.

As to the purchase of the Philadelphia offices in 2017, plaintiff and defendants did not even have a contract for these locations at the time of plaintiff's inquiry to defendants in December 2017.  Although plaintiff and defendants did have a contract in 2019, plaintiff's claims of fraud and negligent misrepresentation relate to defendants' alleged misrepresentations about plaintiff's actual provider status rather than any violations of specific contractual duties or provisions.  These claims instead concern a broader social duty for fraud and negligence rather than a breach of any duty created by the terms of the provider agreement.  Therefore, these claims are not barred by the gist of the action doctrine as they sound in tort and not breach of contract.

In addition to arguing the gist of the action doctrine, defendants claim that plaintiff has failed sufficiently to plead reliance and causation to make out a claim of fraud or negligent misrepresentation.  The court is not persuaded.  To survive a motion to dismiss, plaintiff's complaint need only state facts which make out a plausible claim on its face.  Plaintiff has done this.  Accordingly, Counts I and II may continue as pleaded.

IV

Defendants again argue the gist of the action doctrine to dismiss the claim of tortious interference with a contract or

-10-

business relation in Count IV.  However, this claim is not based on an existing contractual provision between plaintiff and defendants.  Plaintiff alleges that defendants interfered with his ability to contract with his current and future patients based on defendants' letter to plaintiff's patients on December 15, 2017 regarding plaintiff's termination as a covered provider.  As this claim is not based on the violation of contractual duties between plaintiff and defendants, the gist of the action doctrine does not apply in this instance.

Defendants also contend that the amended complaint fails to state a claim for tortious interference because plaintiff has not alleged that defendants' conduct was the cause of lost business relations or that a reasonable likelihood exists that he would have otherwise actualized business relations.  This argument is without merit.

Plaintiff has sufficiently pleaded Count IV of the amended complaint.  Defendants' motion for dismissal of Count IV will be denied.

V

Defendants seek to limit plaintiff's breach of contract claim in Count III to the termination periods listed in the provider agreements which permit defendants to terminate plaintiff's status on either sixty- or ninety-days' notice, depending on the year of the agreement.  It is undisputed that

the parties entered into an agreement in 2019 which created binding contractual duties on each party.  However, the parties dispute the specific provider agreement applicable to plaintiff's termination in 2018.  Defendants claim that the 2011 agreement was in effect at that time.  Plaintiff acknowledges that a provider agreement was in effect when he was terminated in 2018, but he denies that the 2011 agreement was the particular agreement in effect at that time.  The court can only consider documents outside the complaint "whose authenticity no party questions" and upon which the complaint relies.  See Pryor, 288 F.3d at 560.

It is clear from the 2019 provider agreement, however, that a notice period was required before termination became effective.  This agreement requires that written notice of termination be sent to the address provided on the signature page of the agreement ninety days before termination without cause and thirty days before termination with cause.  In the 2019 agreement, the address for plaintiff was listed as 2338 North Front Street in Philadelphia.  Significantly, plaintiff alleges that he never received written notice at the above address prior to termination in 2019.

The dispute cannot be resolved by looking within the four corners of the complaint or at anything else that the court may consider in deciding a motion to dismiss under Rule

12(b)(6).  Consequently, defendants' argument to limit plaintiff's breach of contract claim will be denied.  Count III of the amended complaint may proceed as pleaded.

VI

Defendants move to dismiss Count V of the amended complaint in which plaintiff seeks a declaration that he is a provider in good standing or a reinstatement of plaintiff as a provider in good standing.  Pursuant to the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations" of any party where there is a "case of actual controversy."  28 U.S.C. § 2201(a).  The court must determine if the facts alleged "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  In re Mobile Telecomms. Techs., LLC, 247 F. Supp. 3d 456, 459 (3d Cir. 2017).

The court's jurisdiction under the Act is discretionary and "yields to considerations of practicality and wise judicial administration."  Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995); Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 646-47 (3d Cir. 1990).  A substantial controversy exists between the parties to this action regarding the

credentialing status of plaintiff and the offices plaintiff purchased based on his conversation with defendants.

Defendants' argument that this claim should be dismissed as baseless pursuant to the terms of the provider agreements between the parties lacks merit.  Therefore, Count V of the amended complaint may proceed as pleaded.

### VII

Defendants move to dismiss Count VI for a preliminary injunction on the basis that plaintiff cannot show a likelihood of success on the merits of his claim.  Our Court of Appeals has emphasized that "preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances."  <u>Kos Pharms. Inc. v. Andrx Corp.</u>, 369 F.3d 700, 708 (3d Cir. 2004).

A preliminary injunction is a remedy, rather than a cause of action.  Defendants' motion to dismiss as to Count VI is GRANTED, but the remedy sought remains to the extent applicable to the surviving counts.

### VIII

Plaintiff pleads promissory estoppel in Count VII, which defendants also seek to dismiss.  To recover under a theory of promissory estoppel, plaintiff must establish: (1) defendant made a promise that would be reasonably expected to induce action or forbearance; (2) plaintiff actually took action

or forbore from action in reliance on that promise; and (3) injustice can be avoided only by enforcing the promise. Enchanted Acres Farm, Inc. v. Nature's One LLC, No. 19-2213, 2019 WL 3545390, at *5 (E.D. Pa. Aug. 1, 2019).

Plaintiff alleges a promise by defendants in paragraph 43 of the amended complaint that would be reasonably expected to induce action or forbearance: "In December 2017 . . . Defendants informed the Plaintiff . . . that there were no credentialing and billing problems at the Purchased Offices and instructed Plaintiff to send Defendants the signed purchase agreements when available." Paragraph 48 of the amended complaint states that "Plaintiff reasonably relied on such misrepresentations of Defendants in making the decision to consummate the purchase transactions for the Purchased Offices assets to his detriment."

Finally, plaintiff avers that without defendants' credentialing, plaintiff was forced to close one of the Philadelphia offices that he purchased based on defendants' promise. This closure sustained a loss of approximately $1,000,000 in anticipated revenue.

Plaintiff has adequately pleaded promissory estoppel. Therefore, the motion of defendants to dismiss Count VII of the amended complaint will be denied.